**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY GUNN | ) | |
| | ) | |
| Plaintiff, | ) | No.    2:23-cv-1437 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CORNELL ABRAXAS GROUP, LLC f/k/a | ) | |
| CORNELL ABRAXAS GROUP, INC. and | ) | |
| d/b/a ABRAXAS YOUTH AND FAMILY | ) | |
| SERVICES, and THE GEO GROUP, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Anthony Gunn ("Plaintiff"), by and through his attorneys, Fegan Scott LLC,

files his complaint against Defendants Cornell Abraxas Group, LLC f/k/a Cornell Abraxas

Group, Inc. and d/b/a Abraxas Youth and Family Services, and the GEO Group, Inc.

(collectively, "Abraxas" or "Defendants"), alleging as follows:

### I.    INTRODUCTION

1.    Residential juvenile care facilities have a duty to protect the safety and well-being

of the children committed to their care to further the juvenile justice system's goal of rehabilitation

by ensuring that the children learn and grow to become contributing and productive members of

society.

2.    When a residential juvenile care facility has been delegated by contract and

legislation to provide educational services, it acts as an arm of the Commonwealth in providing a

public core function. In doing so, such residential juvenile care facility becomes a state

governmental actor for 42 U.S.C. § 1983 purposes.

3.    Defendants owned and operated the Abraxas residential facility located in South

Mountain, Pennsylvania for youth adjudicated delinquent. Defendants knew or should have known that the staff members whom they employed, who had unfettered access to the vulnerable children committed to their care, preyed upon and sexually, physically, and emotionally exploited and abused those children committed to Defendants' care.

4. Plaintiff Anthony Gunn, who was 14 years of age at the time, was placed in Defendants' care and endured unrelenting sexual abuse at the hands of Defendants' staff members when he was entrusted to Defendants' care.

5. As a result of this horrific sexual and physical abuse, to this day, Plaintiff suffers from a whole host of mental health issues such as PTSD, anxiety, depression, panic attacks, nightmares, suicide attempts, and drug abuse, as well as continuing involvement in the criminal justice system.

## II. PARTIES

6. Plaintiff Anthony Gunn is a resident of Rockview, Centre County Pennsylvania and citizen of the United States.

7. Defendant Cornell Abraxas Group, LLC f/k/a Cornell Abraxas Group, Inc. is a Delaware limited liability company with its principal place of business at 2840 Liberty Avenue, Suite 300, Pittsburgh, PA 15222-4776. Defendant Cornell Abraxas Group, LLC does business as Abraxas Youth and Family Services (collectively, "Abraxas").

8. Defendant Abraxas Youth and Family Services is a fictitious entity with offices at 2840 Liberty Avenue, Suite 300, Pittsburgh, PA 15222-4776.

9. Defendant the GEO Group, Inc. ("GEO Group") is a Florida Corporation with its principal place of business at 621 NW 53rd Street, Suite 700, Boca Raton, FL 33487. It is registered to do business in Pennsylvania.

10. The GEO Group acquired Cornell Abraxas Group, LLC in 2010.

2

11.     The GEO Group is one of the largest private prison companies in the United States.[1]

### III.   JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter arises under federal law (42 U.S.C. § 1983), as well as 28 U.S.C. § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because two Defendants reside in this District and, at all relevant times herein, the Defendants did business in this District. Defendants are therefore subject to personal jurisdiction in this District.

### IV.   FACTUAL BACKGROUND

**A.     Abraxas was established to help at-risk youth become responsible and productive members of their communities, not to give pedophiles and abusers easy access to vulnerable children.**

14.     Abraxas was founded in 1973 with the operation of a facility knows as Abraxas I, a juvenile residential facility located in Marienville, Pennsylvania.[2]

15.     Today Defendants own and operate juvenile residential facilities located in five states: Pennsylvania, Colorado, Illinois, Ohio, and South Carolina.[3] This is down from its 2005 former business footprint of operating adult and juvenile facilities in 18 states.[4]

16.     Abraxas holds itself out as offering "treatment, behavioral health services, educational & vocational support, life skills, family counseling, recreation and community engagement."[5]

---

[1] https://www.wkyc.com/article/news/investigations/investigator-physical-abuse-sex-alleged-at-ne-ohio-drug-center-for-teens/95-422850009 (last visited 8/4/23).
[2] https://abraxasyfs.org/programs.html (last visited 8/4/23).
[3] *Id.*
[4] https://www.sec.gov/Archives/edgar/vprr/0603/06035909.pdf, 2005 Cornell Companies Annual Report ("Annual Report") (2005), p. 3 (last visited 8/5/23).
[5] https://abraxasyfs.org/programs.html (last visited 8/4/23).

17.    It boasts that it is, "strength-based, client-centered, family-oriented and trauma-focused. Abraxas offers alternative education, outpatient counseling, in-home services, shelter, detention, residential treatment and re-entry/transition assistance."[6]

**B.    Mr. Gunn was placed at Abraxas where he was repeatedly physically and sexually abused.**

18.    In or around December 12, 2008 to April 1, 2009, when he was 14 years old, Mr. Gunn was adjudicated delinquent by the Court of Common Pleas of Erie County, and committed to Abraxas' South Mountain, Pennsylvania location.

19.    While there for little approximately four months, he was repeatedly sexually abused.

20.    During his commitment, he was called to the infirmary for a physical examination. A nurse (name unknown) began to examine Plaintiff. She began asking him questions about sexually transmitted diseases ("STDs"). While on his back, she said that she had to examine him for STDS and to see if he had a drip from his penis. She put her hands on the base of his penis and worked her way up, gave him an erection, and masturbated him to completion.

21.    Mr. Gunn never knew, does not recall, or has suppressed the name of the nurse. She was a heavy-set, dark-haired, white woman in approximately her forties.

22.    During his time there, he had heard from other male students that the same thing had happened to them.

23.    Mr. Gunn was also sexually assaulted by a staff member named Ms. Finkenbinder (or Finkbeiner or some such spelling, but for purposes of this Complaint, "Finkenbinder"). He was abused at least three different times by her.

24.    The first instance occurred when Plaintiff got into trouble for not revealing who

---

[6] *Id.*

wrote a particular letter that was found in Plaintiff's possession. Plaintiff had to stand in an erect, upright position while the Abraxas staff yelled at him in an attempt to find out who wrote the letter. Plaintiff stood there for approximately three hours, and in the face of the yelling, he became upset and started to cry. Abraxas staff then put Plaintiff in Ms. Finkenbinder's office. While there, Ms. Finkenbinder tried to cheer him up and began rubbing his back. She also tried to coax him to reveal who wrote the letter and she said words to the effect of, "I respect how you can keep a secret; so can I." After she said this, she kissed him intimately.

25.    Approximately two weeks later, Ms. Finkenbinder was inspecting the bedrooms and she called Plaintiff into the room that he shared with one other student. When Plaintiff went in, she pulled him aside, kissed him, and stuck her hand down Plaintiff's pants and grabbed his genitals. She told him that the kiss was for him keeping her prior kiss a secret.

26.    During this time Ms. Finkenbinder would groom Plaintiff by doing small favors for him. For example, if he ran out of books, she would get a book from the library for him. Also, she would assign him to chores and tasks that were under her supervision.

27.    The last instance of sexual abuse occurred approximately two weeks before Plaintiff left Abraxas. Plaintiff was assigned to clean the hallway floors. As he was cleaning them, Ms. Finkenbinder asked him to clean the floors of her office. He entered her office, and when there, she closed the door, directed him to her sofa, sat him down, and began intimately kissing him. She had a condom in her pocket and forced Plaintiff to have sex with her.

28.    Mr. Gunn did not, and legally could not, consent to this abuse by the nurse or Ms. Finkenbinder.

   C.    **Prior to the time of Mr. Gunn's placement at Abraxas, Defendants had access to and/or knowledge of information regarding pedophilia, sexual, and physical abuse committed at juvenile justice facilities.**

29.    Prior to and during the time of Mr. Gunn's placement at Abraxas, Defendants knew

or should have known about problems of sexual and physical abuse being committed by staff and employees of Pennsylvania's residential juvenile facilities.

30. In November of 1987, the Rand Corporation completed a study supported by the Department of Justice's Office of Juvenile Justice and Delinquency Prevention. The report, entitled, "The

31. Program: an Evaluation," examined the practices at one of Pennsylvania's juvenile facilities, VisionQuest. The report memorialized the VisionQuest's controversial physical "confrontations" by staff to deal with inappropriate behavior of the juveniles, and several child-abuse complaints lodged against VisionQuest staff members.[7]

32. A year later, another article again reported about VisionQuest's abusive practices, where physical restraint, and other forms of physical contact, were used to control the juveniles: "[a]ny recalcitrant teen who sits down and refuses to obey instructions can expect to be manhandled."[8]

33. Defendants were aware of the potential for abuse and misconduct in their own juvenile facilities. In its 2005 Annual Report, the Cornell Companies informed its stockholders that its profits could suffer if government audits would uncover "improper or illegal activities" in its business.[9] The Annual Report noted a high turnover of personnel in its juvenile facilities within the first year of their employment,[10] which should have been a red flag warranting further investigation by Defendants about events occurring in its facilities.

34. In a 2017 investigation, actual abuses were reported both by students, parents, and

---

[7] https://www.rand.org/pubs/reports/R3445.html (last visited 8/6/23).
[8] https://www.phoenixnewtimes.com/news/business-az-usual-6421940 (last visited 8/5/23).
[9] Annual Report at 16.
[10] *Id.* at 17.

staff at Abraxas' Ohio facility. Among other allegations, at least six former employees reportedly engaged in "sexual conduct" with the facility's juvenile residents. Physical confrontations and the use of restraints on the students was rampant in that facility.[11]

35.    In a 2019 report entitled "Transforming Justice: Bringing Pennsylvania's Young People Safely Home from Juvenile Justice Placements," the Juvenile Law Center concluded that "incarcerating youth in the juvenile justice system is both dangerous and ineffective." This is because, among other reasons, "far too many youth sent to 'treatment' facilities experience abuse or neglect and fail to receive needed behavioral health services."[12]

36.    Citing a national survey, Transforming Justice reported that "of over 7,000 youth in juvenile facilities, an unacceptably high rate of youth (29%) reported 'being beaten up or threatened with being beaten up since coming to their facility.'" Nearly one quarter (24%) of the assailants were facility staff.[13]

37.    There were significant racial and ethnic disparities in Pennsylvania's juvenile facilities as compared to the rest of the country. In 2015, Black youth were incarcerated at a rate 6 times the rate of white youth.[14]

38.    Transforming Justice also reported that "[r]ecent research has shown that placement also leads to long-term mental and physical health consequences."[15] This includes depressive

---

[11] https://www.wkyc.com/article/news/investigations/investigator-physical-abuse-sex-alleged-at-ne-ohio-drug-center-for-teens/95-422850009 (last visited 8/5/23).

[12] https://jlc.org/sites/default/files/attachments/2019-10/Transforming_Justice_final.pdf ("Transforming Justice"), p.2 (last visited 8/5/23).

[13] *Id.* at 9 (citation and footnotes omitted).

[14] *Id.* at 4 (citation and footnotes omitted).

[15] *Id.* at 2.

symptoms and functional limitations as an adult, in increasing severity with the length of incarceration. [16] "[J]ustice system placements can make trauma symptoms worse."[17]

**D.    As a result of the sexual and physical abuse he suffered at Abraxas, Mr. Gunn suffers from life-long mental health issues and continued involvement in the criminal justice system.**

39.    The sexual and physical abuse that Mr. Gunn suffered at Abraxas has negatively and profoundly affected him.

40.    Prior to Abraxas, Mr. Gunn suffered from ADHD. Since Abraxas, he has been diagnosed with major depressive disorder, PTSD, anxiety, adjustment disorder, borderline personality disorder, bipolar disorder, and schizophrenia. He has been on various medications, including anti-psychotic medications, as a result of the abuse he suffered. He takes various medications for his mental conditions to this day.

41.    As a result of the abuse he suffered, Plaintiff does not respect authority. This has led to his continuing involvement in the criminal justice system, which he attributes directly to the abuse he suffered.

42.    The sexual abuse Plaintiff suffered at Abraxas has impacted his relationships with his parents and siblings. Since he has been incarcerated most of his life, he has not been able to develop close relationships with them. While he often talks to his family, he hasn't had the ability to have actual "in person" time with them. He also has not been able to discuss what happened to him. In addition, his intimate relationships to this day have always been difficult.

43.    Plaintiff began to suffer from nightmares, night terrors, and night sweats. Today he still suffers from panic attacks and nightmares. His nightmares subsided for a time, but when this case came about, they resurfaced as he started reliving the abuse. Now, little noises make Plaintiff

---

[16] *Id.* at 9 (citation and footnotes omitted).
[17] *Id.*

wake with a start, and he never feels 100% safe.

44.    Once he left Abraxas, Mr. Gunn became a drug addict. Before Abraxas, he tried drugs as a curiosity; afterwards, he sought them out to get high and numb his pain.

45.    Plaintiff has also had three suicide attempts which he directly attributes to the abuse he suffered. One time he attempted to shoot himself but the gun jammed. Another time when he was arrested, he intentionally overdosed on heroin because he did not want to go back to prison. His heart stopped but he was revived.

46.    Mr. Gunn is in need of mental health counseling and treatment, but because he is incarcerated, he is not afforded adequate mental health treatment.

**E.    Defendants are liable for the actions of its employees and those acting under its supervision, authority, or control pursuant to the doctrine of respondeat superior.**

47.    The nurse mentioned above was working and providing medical services at Abraxas.

48.    At all relevant times, Abraxas was charged with supervising and controlling its employees, staff members, and others working at Abraxas under its supervision, authority, or control, including the nurse and Ms. Finkenbinder.

49.    The wrongful acts of Abraxas' employees, staff members, and others working at Abraxas under its supervision, authority, or control including the nurse and Ms. Finkenbinder, were committed in the actual or apparent course and scope of their employment and/or authority with Abraxas.

50.    Abraxas' employees, staff members, and others working at Abraxas under its supervision, authority, or control, including the nurse and Ms. Finkenbinder, used the authority delegated to them to sexually abuse Plaintiff.

51.    Because the Abraxas employees, staff members, and others working at Abraxas

under its supervision, authority, or control, including the nurse and Ms. Finkenbinder, were agents of Abraxas and served in a supervisory role, Defendants are liable for their abusive conduct under the doctrine of respondeat superior.

## V.  CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983

52.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

53.    The Eighth Amendment, incorporated to the states by the Fourteenth Amendment, prevents cruel and unusual punishment. The Fourteenth Amendment prevents the deprivation of life, liberty, or property without due process, and provides for equal protection of the laws.

54.    Abraxas acts as an arm of the Commonwealth of Pennsylvania operating in its borders, providing a core public function, and is a statement governmental actor for purpose of 42 U.S.C. § 1983.

55.    Defendants acted deliberately indifferent and failed to provide a safe custodial setting for Plaintiff by, among other things, failing to properly hire, train, supervise, and improperly retaining, its employees, staff members, and others working at Abraxas under its supervision, authority, or control.

56.    Defendants knew or should have known that employees, staff members, and others working at Abraxas under its supervision, authority, or control engaged in wrongful conduct alleged herein, amounting to a deliberate indifference of Plaintiffs' Constitutional rights.

57.    As a direct and proximate result of Defendants' deliberate indifference, Plaintiff has been deprived of his Constitutional rights and harmed where numerous acts of sexual and physical abuse were perpetrated on him, resulting in the injuries outlined above.

58.    Plaintiff is entitled to compensation for his injuries, including punitive damages

10

and attorneys' fees.

## COUNT II: NEGLIGENCE

59.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

60.     At all relevant times, Defendants owed Plaintiff a duty to maintain a safe environment with adequate protection, supervision, and care while Plaintiff was in Defendants' care and custody.

61.     Defendants, as well as its employees, staff members, and others working at Abraxas under its supervision, authority, or control, also had a duty to report child abuse if a reasonable belief that it has occurred exists, as required by 55 Pa. C.S. § 3680, *et seq*.; 55 Pa. C.S. § 3800, *et seq*; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendants.

62.     Defendants also had duties to both protect Plaintiff and to control the acts of Defendants' employees, staff members, and others working at Abraxas under its supervision, authority, or control. This is because of the special relationship between Defendants and Plaintiff, as a child deprived of his normal power of self-protection when committed to Defendants' residential juvenile care facility, and because of Defendants' special relationship with their employees, staff members, and others working at Abraxas under its supervision, authority, or control, as the class of persons whose conduct needs to be controlled.

63.     Defendants breached these duties through their acts and omissions, including but not limited to:

       a.  allowing, authorizing, or turning a blind eye to a culture of sexual and physical abuse at Abraxas;

       b.  failing to train and educate the employees, staff members, and others working at Abraxas under its supervision, authority, or control regarding the

11

identification and reporting of sexual and physical abuse;

c.  failing to instruct and train supervisors of the employees, staff members, and others working at Abraxas under its supervision, authority, or control regarding circumstances indicating a high risk of sexual and physical abuse;

d.  failing to properly screen staff members, teachers, nurses, counselors, employees, agents, and servants before placing them in close contact with the young and vulnerable residents and students at Abraxas;

e.  failing to adequately supervise staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

f.  failing to monitor staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

g.  failing to monitor Plaintiff's well-being while at Abraxas so as to detect incidents of abuse;

h.  failing to properly investigate complaints of sexual, physical, and/or emotional abuse and/or other inappropriate behavior;

i.  failing to take adequate and appropriate measures after learning about repeated incidents of physical, sexual, and emotional abuse within Abraxas;

j.  failing to report criminal activity, including child abuse, to appropriate law enforcement agencies;

k.  failing to establish, implement, and maintain proper and effective policies to prevent sexual, physical, and/or emotional abuse to the students and residents of Abraxas;

l.  failing to establish, implement, and maintain proper and effective policies to for adequate observation, management, oversight, and supervision of the staff and employees of Abraxas; and

m.  failing to prevent serious and lasting psychological, physical, sexual, and emotional harm to Plaintiff while at Abraxas.

64.  Defendants knew or should have known that their employees, staff members, and others working at Abraxas under its supervision, authority, or control, were not fit to be in the presence of the juveniles over whom Defendants had custody and/or responsibility.

65.  Defendants are vicariously liable for the negligent and intentional acts of their employees, staff members, and others working at Abraxas under its supervision, authority, or control.

66.  As a direct and proximate result of Defendants' breaches of its duties of care,

12

Plaintiff has been harmed and numerous acts of sexual and physical abuse were perpetrated on him, resulting in the injuries outlined above.

67. Plaintiff is entitled to compensation for his injuries.

**COUNT III: NEGLIGENT HIRING, SUPERVISION, AND RETENTION**

68. Plaintiff incorporates by reference every allegation set forth in preceding paragraphs as if fully stated herein.

69. Prior to the time Plaintiff was sexually and physically abused, Defendants knew or should have known that the residents and students at Abraxas were vulnerable to, and potential victims of, sexual, physical, and/or emotional abuse.

70. Prior to the time Plaintiff was sexually and physically abused, Defendants knew or should have known that living within a residential juvenile care facility and/or working at a residential juvenile care facility was an enticing location and/or profession for sexual predators and those seeking to abuse and exploit children.

71. At all relevant times when the sexual and physical abuse of Plaintiff took place, the employees, staff members, and others working at Abraxas were under the supervision and control of Defendants, either directly or indirectly.

72. Defendants knew that the employees, staff members, and others working at Abraxas under its supervision, authority, or control, would have regular access to the young and vulnerable students and residents of Abraxas.

73. Defendants owed a duty to exercise reasonable care in the hiring, assignment, control, selection, supervision, and/or retention of staff, teachers, nurses, counselors, employees, agents, servants, and/or representatives residing in, employed by, and/or affiliated with Defendants, and specifically, a duty to be on the lookout for pedophiles, sexual predators, and those seeking to abuse and exploit the young and vulnerable students and residents of Abraxas.

74. Defendants breached these duties through their acts and omissions, including but not limited to:

a. allowing, authorizing, or turning a blind eye to a culture of sexual and physical abuse at Abraxas;

b. failing to properly screen staff members, teachers, nurses, counselors, employees, agents, and servants before placing them in close contact with the young and vulnerable residents and students at Abraxas;

c. failing to adequately supervise staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

d. failing to monitor staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

e. failing to establish, implement, and maintain proper and effective policies to for adequate observation, management, oversight, and supervision of employees, staff members, and others working at Abraxas under its supervision, authority, or control; and

f. failing to prevent serious and lasting psychological, physical, sexual, and emotional harm to Plaintiff while at Abraxas.

75. Defendants knew or should have known of the necessity of supervising, monitoring, and controlling their employees, staff members, and others working at Abraxas under its supervision, authority, or control to ensure the safety and protection of the residents and students at Abraxas.

76. Defendants also knew or should have known the risk that employees, staff members, and others working at Abraxas under its supervision, authority, or control presented to the students and residents of Abraxas, where they had a propensity to commit criminal acts and that their close proximity to the students and residents of Abraxas placed the children at a risk of harm and where harm actually did occur.

77. The sexual and physical abuse of Plaintiff took place by employees, staff members, and others working at Abraxas under its supervision, authority, or control, acting in the course and scope of their authority with the Defendants and/or accomplished the abuse based on the actual or

14

apparent authority given to them by the Defendants.

78.    The sexual and physical abuse to which Plaintiff was subjected with committed on the premises of Abraxas.

79.    Defendants failed to exercise ordinary care in hiring, supervising, and retaining the employees, staff members, and others working at Abraxas under its supervision, authority, or control, negligently and recklessly causing harm to Plaintiff.

80.    Defendants failed to prevent foreseeable misconduct of the staff and employees of Abraxas which resulted in harm to Plaintiff.

81.    As a direct and proximate result of Defendants' breaches of its duties of care, Plaintiff has been harmed and numerous acts of sexual and physical abuse were perpetrated on him, resulting in the injuries outlined above.

82.    Plaintiff is entitled to compensation for his injuries.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

83.    Plaintiff incorporates by reference every allegation set forth in preceding paragraphs as if fully stated herein.

84.    At all relevant times, Defendants owed Plaintiff a duty to maintain a safe environment with adequate protection, supervision, and care while Plaintiff was in Defendants' care at custody at Abraxas.

85.    As a result of the sexual and physical abuse committed by the employees, staff members, and others working at Abraxas under its supervision, authority, or control, Plaintiff suffered extreme and severe emotional distress.

86.    The emotional distress included but was not limited to horror, pain, anxiety, worry, post-traumatic stress, humiliation, embarrassment, shock, shame, feelings of powerlessness, anger, aggression, fear and mistrust of authority, stress, difficulty sleeping, nightmares, night sweats,

hypervigilance, depression, emotional withdrawal, and difficulty coping with daily life.

87.     To this day Plaintiff continues to struggle from and deal with his severe emotional distress.

88.     Defendants' negligence was the proximate cause of Plaintiff's severe emotional distress.

89.     Plaintiff is entitled to compensation for his injuries.

### COUNT V: GROSS NEGLIGENCE

90.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

91.     Defendants were grossly negligent under the facts alleged herein because Defendants acted with complete disregard of the rights, safety, and well-being of Plaintiff.

92.     As a direct and proximate result of Defendants' gross negligence, Plaintiff has been harmed and numerous acts of sexual and physical abuse were perpetrated on him, resulting in the injuries outlined above.

93.     Plaintiff is entitled to compensation for his injuries, including punitive damages.

### COUNT VI: BREACH OF FIDUCIARY DUTY

94.     Plaintiff incorporates by reference every allegation set forth in preceding paragraphs as if fully stated herein.

95.     Defendants, as owners, operators, and supervisors of residential juvenile care facilities owed Plaintiff, and others committed to their care, a special duty of care. This included the duty to protect them from staff, teachers, nurses, employees, agents, servants, and representatives hired, supervised, retained, and otherwise controlled by Defendants.

96.     Defendants breached their fiduciary duties for the reasons alleged herein.

97.     As a direct and proximate result of Defendants' breaches of its fiduciary duty,

16

Plaintiff has been harmed and numerous acts of sexual and physical abuse were perpetrated on him, resulting in the injuries outlined above.

98.     Plaintiff is entitled to compensation for his injuries.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Gunn demands judgment against Defendants and an award of compensatory damages, punitive damages, pre-judgment interest, costs and attorneys' fees, and such other legal and equitable relief as the Court deems just and appropriate.

## VII.   JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 10, 2023                          Respectfully submitted,

**FEGAN SCOTT LLC**

By:  */s/ Lynn A. Ellenberger*
Lynn A. Ellenberger
lynn@feganscott.com
PA # 59896
Lisa H. Fish
lisa@feganscott.com
PA # 328646
500 Grant St., Suite 2900
Pittsburgh, PA 15219
Telephone: (412) 346-4104
Facsimile: (312) 264-0100