IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY GUNN, | ) |
| | ) |
| Plaintiff, | )   2:23-CV-01437-CCW |
| v. | ) |
| | ) |
| CORNELL ABRAXAS GROUP, LLC;  THE GEO GROUP, INC.;  JOHN SWATSBURG; ROB PAETOW;  JOE SEMULKA;  BOB VOAS;  CORNELL ABRAXAS GROUP, INC., | ) ) ) ) |
| Defendants. | |

**OPINION**

Before the Court is Defendants' Motion to Dismiss the Amended Complaint in its entirety for failure to state a claim, and to strike certain allegations within it. *See* ECF No. 25.

For the reasons that follow, Defendants' Motion will be granted, and Plaintiff's claims will be dismissed without prejudice and with leave to amend.

**I.   Background**

Plaintiff Anthony Gunn alleges that he was sexually abused in 2008-2009, while living at Abraxas Youth and Family Services' residential facility for youth adjudicated delinquents in South Mountain Pennsylvania ("Abraxas South Mountain"). Defendants are the corporate entities that owned and operated that facility (Cornell Abraxas Group, LLC and Cornell Abraxas Group, Inc.) or later merged with those entities (the GEO Group, Inc.) (collectively, "Abraxas Entities"), as well as individuals who "were officers and directors" of the Abraxas South Mountain facility "and/or assumed its liabilities" (collectively, "Individual Defendants").

1

Mr. Gunn brings federal claims under 42 U.S.C. § 1983 against the Abraxas Entities in Counts 1 and 2 alleging violations of his rights under the Eighth and Fourteenth Amendments,[1] and state law claims against combinations of defendants in Counts 3 through 7.[2]

The relevant factual allegations, taken as true, are as follows.

Around December 12, 2008, when he was 14 years old, Mr. Gunn was adjudicated delinquent by the Court of Common Pleas of Erie County and committed to Abraxas South Mountain. ECF No. 17 ¶ 26. He remained there for slightly less than four months, until April 1, 2009, during which time he turned 15. *Id.* ¶¶ 26–27. While at Abraxas South Mountain, Mr. Gunn was "repeatedly sexually abused." *Id.* ¶ 27. On one occasion, he was called to the infirmary for a physical examination. *Id.* ¶ 28. An unnamed nurse began to examine Mr. Gunn, informing him that she needed to examine him "for STDs and to see if he had a drip from his penis," and then she put her hands on his penis, "gave him an erection, and masturbated him to completion." *Id.* Mr. Gunn alleges that "[w]hile at Abraxas, he had heard other male students claim that the same thing had happened to them by the same nurse." *Id.* ¶ 30. Mr. Gunn also contends that he "was sexually assaulted by a staff member and agent of Abraxas named Ms. Finkenbinder" at least three times, including being "kissed intimately" by her, having her put her hands down his pants and grab his genitals, and "forc[ing] [him] to have sex with her." *Id.* ¶¶ 31–35. Mr. Gunn alleges that Ms. Finkenbinder "would groom Plaintiff by doing small favors for him," including "if he ran out of books, she would get a book from the library for him." *Id.* ¶ 34. She would also assign him to do chores and tasks that were under her supervision. *Id.* Further, he asserts that Ms. Finkenbinder

---

[1] Defendants' Brief in Support of their Motion to Dismiss includes arguments implying that Plaintiff's § 1983 claims are brought against the Individual Defendants as well as the Abraxas Entities. *See, e.g.*, ECF No. 26 at 6–7. However, Plaintiff's Response in Opposition confirms that he has not asserted any § 1983 claims against the Individual Defendants. ECF No. 34 at 2.

[2] The Court has federal question jurisdiction over Counts 1 and 2 pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over the state law claims in Counts 3 through 7, pursuant to § 1367.

told him, "I respect how you can keep a secret," and that she said her kissing him "was for him keeping her prior kiss a secret." *Id.* ¶¶ 32, 33.

As a result of the alleged abuse, Mr. Gunn asserts that he suffers from life-long mental health issues, an inability to earn a living and be a productive member of society, and continued involvement in the criminal justice system. *Id.* ¶¶ 54–62. He seeks money damages on all of his claims, among other relief.

Defendants now move to dismiss the federal and state claims on various grounds and move to strike certain allegations in the Amended Complaint. ECF No. 26. With briefing now complete, ECF Nos. 25, 26, 34, 36, 37, the Motion is ripe for resolution.

## II.     Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

**III.  Discussion**

In his Amended Complaint, Mr. Gunn brings multiple federal and state law claims against the Abraxas Entities and the Individual Defendants.  ECF No. 17.  As against the Abraxas Entities specifically, Mr. Gunn brings two federal claims:  a *Monell* claim (Count 1) and a state-created danger/unsafe conditions of confinement claim (Count 2), both pursuant to 42 U.S.C. § 1983.  *Id.* ¶¶ 75–99.  And as against all Defendants, Mr. Gunn brings the remaining state-law claims:  a negligence claim (Count 3), a negligent hiring claim (Count 4), a negligent infliction of emotional distress claim (Count 5), a gross negligence claim (Count 6), and a breach of fiduciary duty claim (Count 7).  *Id.* ¶¶ 100–141.

4

Defendants now move to dismiss the federal and state claims on various grounds and move to strike certain allegations in the Amended Complaint. ECF No. 26. For the reasons set forth below, the Court finds that Mr. Gunn's federal claims in Counts 1 and 2 are time-barred, and the Court declines to exercise supplemental jurisdiction over Mr. Gunn's remaining state claims.

### A. Mr. Gunn's Federal Claims Are Time-Barred by the Applicable Statute of Limitations

In Counts 1 and 2 of his Amended Complaint, Mr. Gunn brings claims against the Abraxas Entities pursuant to 42 U.S.C. § 1983, alleging they violated his Eighth and Fourteenth Amendment rights when he was sexually abused at the Abraxas South Mountain facility.[3] ECF No. 17 ¶¶ 75–99. The Abraxas Entities move to dismiss the § 1983 claims on various grounds, including that they are time barred by the applicable statute of limitations. ECF No. 26 at 10–12.

The running of a statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c). The Court may grant a motion to dismiss on statute of limitations grounds "only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 153, 157 (3d Cir. 2017). Section 1983 borrows its statute of limitations from the personal injury tort law of the state where the cause of action arose. *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). Under Pennsylvania law, the statute of limitations for personal injury torts is two years, or if the person was a minor at the time of the injury, two years from the person's eighteenth birthday. 42 Pa. C.S. §§ 5524, 5533(b)(1). Here, the Amended Complaint plainly states that Mr. Gunn was fourteen and fifteen years old between December 2008 and April 1, 2009 when the alleged sexual abuse occurred, which means he would have turned eighteen in 2012. ECF No. 17 ¶¶ 4, 26. Thus, he needed to file his claims sometime in 2014 unless, as he argues, they (1) did

---

[3] The Court does not address whether the elements of a *Monell* claim are satisfied, or whether there is an underlying constitutional violation, because even if Mr. Gunn cleared those hurdles, the Court concludes that his claims are barred on statute of limitations grounds.

not accrue until some later time;  (2) were subject to a different, longer statute of limitations;  or (3) were tolled.  The Court will address each of those issues below.

### 1. Mr. Gunn's Claims Accrued in 2008-2009 when the Abuse Occurred

Mr. Gunn asserts that his claims did not accrue at the time of the alleged sexual abuse in 2008-2009, but rather accrued only in 2022, when he became aware of an unrelated federal lawsuit filed in the Western District of Pennsylvania asserting § 1983 claims against an Abraxas entity for alleged sexual abuse.  *See* ECF No. 34 at 10 (discussing *Van Buren v. Abraxas Youth & Fam. Servs.*, No. 22-499 (W.D. Pa.) (Wiegand, J.)).  In response, the Abraxas Entities contend that Mr. Gunn's claims accrued when the abuse happened in 2008-2009 because he knew he was being abused at that time.  ECF No. 26 at 12.

Determining when a § 1983 claim accrues is a question of federal law.  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Genty v. Resol. Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)).  Under federal law, a civil rights claim accrues "when the plaintiff knew or should have known of the injury upon which its action is based."  *Id.* (quoting *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).  This is an objective inquiry, with a cause of action accruing "at the moment at which each of its component elements has come into being as a matter of objective reality."  *Leonard v. City of Pittsburgh*, 570 Fed. App'x 241, 244 (3d Cir. 2014) (citing *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011)).  Generally, a cause of action is considered to have accrued "when the last act needed to complete the tort occurs." *English v. City of Wilkes-Barre*, No. 22-2477, 2023 WL 2400698, *2 (3d Cir. Mar. 8, 2023).

Here, applying federal law, the Court concludes that Mr. Gunn's claims accrued between December 12, 2008 and April 1, 2009, when the unnamed nurse and Ms. Finkenbinder abused him while he was living at the Abraxas South Mountain facility.  That was when Mr. Gunn suffered an

injury: as the Complaint plainly alleges, he was, inter alia, "masturbated to completion" by the unnamed nurse and "forced to have sex" with Ms. Finkenbinder. ECF No. 17 ¶¶ 26–36. And although Mr. Gunn alleges that he should not be charged with knowledge that "what happened to him . . . [was] institutionalized sexual abuse and related cover-up," ECF No. 34 at 10, numerous courts have found that a reasonable person should have known that sexual abuse constituted an injury at the time of the abuse. *See Bundy v. Cumberland Cnty.*, No. 21-20259, 2022 WL 6966945, at *4 (D.N.J. Oct. 11, 2022) (finding that inmate's claims accrued at time of sexual assaults by prison officials because she "was clearly aware of her injuries as they occurred."); *Stephens v. Clash*, No. 1:13-cv-712, 2014 WL 2808599, at *3 (M.D. Pa. June 19, 2014) (finding that juvenile plaintiff's claims were time barred because claims accrued at time of sexual assaults, and despite tolling statute of limitations until age of eighteen, plaintiff did not sue within applicable time period), *aff'd*, 796 F.3d 281 (3d Cir. 2015); *Fisher v. Hollingsworth*, 18-16793, 2022 WL 3500432, *2 (D.N.J. Aug. 18, 2022) (finding inmate's claims accrued at time inmate was raped because inmate "knew of or had reason to know of [the] injuries" even though prison officials allegedly told inmate not to discuss the rape or speak with an attorney, otherwise the abuser would seek revenge), *aff'd*, No. 22-2846, 2024 WL 3820969, at *2 (3d Cir. Aug. 15, 2024).

Mr. Gunn's remaining arguments are unpersuasive. In his Response to Defendants' Motion, Mr. Gunn mentions accrual briefly, first to note the correct general proposition that federal law determines accrual, ECF No. 34 at 9, but then he incorrectly intertwines accrual and tolling, contending that "plaintiff plausibly pled the tolling and accrual doctrines of fraudulent concealment, equitable tolling, and the discovery rule," *id.* at 9–10. He also contends that § 1983 claims do not accrue until "the wrongful act or omission results in damages," citing *Dique v. N.J. State Police*, 603 F.3d 181, 185–86 (3d Cir. 2010) for the proposition. ECF No. 34 at 9. But as

7

the Third Circuit recently recognized, *Dique* is inapplicable in cases such as this one, because "[it] did not delay accrual under federal law. Rather, it said it was doing so under a state law that tolled the statute of limitations." *English*, 2023 WL 2400698, *2 (citing *Dique*, 603 F.3d at 185–88).[4]

Accordingly, under federal law, Mr. Gunn's § 1983 claims accrued at the time of the incidents of abuse, which is to say, at the latest, on April 1, 2009 when he was released from Abraxas South Mountain.

### 2. Pennsylvania's Specialized Statute for Sexual Abuse Does Not Extend Mr. Gunn's Time for Filing

Next, Mr. Gunn asserts that Pennsylvania's specialized statute extending the time for filing civil actions arising from sexual abuse, 42 Pa. C.S. § 5533(b)(2)(i), rather than its general two-year statute of limitations for personal injury, applies to his § 1983 claims and renders them timely. ECF Nos. 34, 37. The Court disagrees with Mr. Gunn.

The Third Circuit recently addressed "what happens when a state provides multiple statutes of limitations." *Fisher*, 2024 WL 3820969, at *7–8. The Court explained that to "limit[] confusion and promote[] predictability," § 1983 claims "are best characterized as personal injury actions, so a state's statute of limitations for injury to person applies." *Id.* (internal quotations omitted); *see also Owens v. Okure*, 488 U.S. 235 (1989). And where a state has multiple statutes of limitations for personal injury actions, courts "should borrow the general or residual statute for personal injury

---

[4] The fact that Plaintiff's § 1983 claims are purported *Monell* claims against the Abraxas Entities, as opposed to § 1983 claims against individual defendants, does not change the court's conclusion about when Mr. Gunn's claims accrued. *See, e.g.*, *English*, 2023 WL 2400698, at *2. Further, to the extent Mr. Gunn argues for a delayed-accrual rule, the Court also finds that the Third Circuit has foreclosed the availability of this rule. For example, in a case involving a *Monell* claim against a municipality, the Third Circuit rejected a delayed-accrual rule that would have tied "accrual to when [plaintiffs] knew or should have known of *both* their injury and all its causes." *Id.* In rejecting this rule, the Court explained that "[o]ur Circuit has not adopted the delayed-accrual rule. But even if it had . . . Plaintiffs had enough information to suspect that [the municipality] might have been deliberately indifferent to [the employee's] misconduct and investigate further." *Id.* Therefore, even if the Court applied a delayed-accrual rule to Mr. Gunn's claims, he still had enough information to suspect, at the time of the abuse, that the Abraxas Entities might have known of their employees' misconduct and been deliberately indifferent.

actions." *Id.* Here, Pennsylvania has two statutes of limitations for personal injury actions: § 5533(b)(2)(i), which extends the limitations period for civil actions arising from sexual abuse; and § 5524, which sets the two-year limitation for general personal injury claims. Accordingly, because § 5524 is Pennsylvania's general or residual statute for personal injury actions, the Court will apply this statute to Mr. Gunn's claims.

### 3. Mr. Gunn's Claims are Untimely

Applying the above analysis, Mr. Gunn's claims accrued at the time of his abuse, which, at the latest, would be on April 1, 2009. *See* Part III.A.1. Further, because Mr. Gunn was a minor at the time of his abuse, the statute of limitations is tolled until he reaches the age of majority, which would have been, at the latest, April 1, 2012. Finally, because Pennsylvania's general statute of limitations for personal injury actions applies, *see* Part III.A.2, Mr. Gunn had until April 1, 2014 to bring his federal claims. Because Mr. Gunn did not file his federal claims until August 10, 2023, ECF No. 1, the Court finds that his claims are time-barred and will be dismissed unless an equitable tolling principle applies.

### B. Tolling the Statute of Limitations is Not Warranted

Mr. Gunn contends that even if his claims are time-barred, the court should toll the statute of limitations on several state-law grounds: Pennsylvania's discovery rule, doctrine of fraudulent concealment, and general equitable tolling. ECF No. 34 at 9–11. In their Motion, Defendants assert that these equitable tolling principles are not applicable to the facts of this case. ECF No. 26 at 11–12. In § 1983 cases, federal courts generally apply state law tolling principles, with certain exceptions.[5] *Leonard*, 570 Fed. App'x at 241 (citing *Kach*, 589 F.3d at 639). The

---

[5] For example, where the parties allege there is a conflict between state and federal equitable tolling principles, which neither side has asserted here.

Pennsylvania Supreme Court uses "equitable tolling" as an "umbrella" concept, under which the discovery rule and fraudulent concealment fall. *Riad v. Wells Fargo Bank*, No. 22-1757, 2023 WL 8676234, *3 (3d Cir. Mar. 23, 2023) (quoting *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 248 n.3 (Pa. 2021)). The Court will address each principle in turn below.

### 1. The Discovery Rule

Mr. Gunn first argues that the discovery rule applies to his case and should toll the applicable statute of limitations. ECF No. 34 at 9–11. Pennsylvania's discovery rule "tolls the statute of limitations where an injury or its cause is not reasonably knowable." *Rice*, 255 A.3d at 246; *Getchy v. Cnty. of Northumberland*, 120 Fed. App'x 895, 898 (3d Cir. 2005) ("[W]here the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible."). Further, courts will not toll the statute of limitations unless the plaintiff can show that he used "reasonable diligence to investigate [his] claims." *Riad*, 2023 WL 8676234, at *3. A plaintiff demonstrates reasonable diligence in investigating his claims where he "exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *Id.* The Pennsylvania Supreme Court acknowledges that the discovery rule is "strict" and "less plaintiff favorable." *Rice*, 255 A.3d at 247; *Getchy*, 120 Fed. App'x at 898–99 (finding that the discovery rule only applies "to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury" and "battery is not [typically] such an injury.").

Here, Mr. Gunn raises several reasons that his abuse was not "reasonably knowable" at the time it occurred. First, he generally asserts that "being a minor at the time of the abuse, [he]

10


believed that [sexual abuse] was a normal and an acceptable practice at Abraxas. This is because Plaintiff learned about the abuse of other students in similar ways, and so such conduct was treated as normal and acceptable among everyone at Abraxas." ECF No. 17 ¶ 64. With respect to the unnamed nurse,[6] Mr. Gunn contends that he was not aware her actions constituted abuse because (1) "it was committed by a trained medical professional in whom Plaintiff placed his trust" and (2) because "the sexual abuse by the nurse in the infirmary was treated as normal and discussed among the students." ECF No. 34 at 9–10. Mr. Gunn then asserts that "it was not until March 28, 2022, when a class action complaint was filed against Abraxas in this District. . . when Plaintiff was *on notice* of the extensive cover up and code of silence regarding the abuse committed by Abraxas agents that lasted for decades and was known only to Defendants." ECF No. 17 ¶ 66.

Despite Mr. Gunn's arguments, the Court finds that he has failed to show he was reasonably diligent in investigating his claims. Mr. Gunn had not only a reason but a duty to investigate what the unnamed nurse and Ms. Finkenbinder allegedly did to him. As the Pennsylvania Supreme Court has stated, "[p]ausing the running of the statute of limitations arises from the inability, despite the exercise of diligence, to determine the injury or its cause, not upon a retrospective view of whether the facts were *actually* ascertained within the [limitations] period." *Rice*, 255 A.3d at 255 (internal quotations omitted). Stated differently, "[t]he polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law." *Gunn v. Vision Quest Nat'l Ltd.*, No. 23-225, 2024 WL 3013846, at *3 (W.D. Pa. June 14, 2024) (Baxter, J.).

---

[6] Mr. Gunn does not provide an argument for applying the discovery rule specifically with respect to the abuse by Ms. Finkenbinder. *See generally* ECF Nos. 17, 34, 37.

Here, Mr. Gunn was obligated, within two years of turning eighteen, to investigate his claims, and it is apparent from the face of the Amended Complaint that he did not do so. Mr. Gunn knew in 2008-2009 that he had been "masturbated to completion" by a nurse at South Mountain at the time that asserted conduct took place, and that he had been "kissed intimately," had his genitals fondled, and "had sex with" Ms. Finkenbinder at the time those events took place. Yet Mr. Gunn does not allege any actions on his part to investigate these incidents in the two years after he turned eighteen. *See generally* ECF No. 17. Further, based on the allegations in the Amended Complaint, Mr. Gunn was also aware of who had caused the injury—namely, two staff members at the Abraxas South Mountain facility. ECF No. 17 ¶¶ 28, 29, 31. And when describing the harm he suffered from the abuse, Mr. Gunn acknowledges that he "began to suffer from nightmares, night terrors, and night sweats while at Abraxas." *Id.* ¶ 58.

Thus, viewing the allegations in the Amended Complaint in the light most favorable to Mr. Gunn and drawing all reasonable inferences therefrom, the information about his injuries and their cause were knowable to him. *See Fox v. Lackawanna Cnty.*, No. 3:16-cv-1511, 2017 WL 5007905, at *8 (M.D. Pa. Nov. 2, 2017) (finding that the discovery rule did not apply because plaintiffs "were aware of their injuries at the time they were sexually assaulted and harassed" and the existence of a cover-up did not make their injuries unknowable). Mr. Gunn's failure to investigate these injuries is a failure to engage in reasonable diligence. *See Leonard*, 570 Fed. App'x at 245 (refusing to apply the discovery rule because plaintiff did not engage in reasonable diligence where she "knew of her injury by [defendant], and—importantly—she knew that he was a police officer employed by the City in June 2008. Exercising reasonable diligence, she could have discovered at that time a potential *Monell* claim against the City."). Therefore, Mr. Gunn is not entitled to

tolling based on the discovery rule. The Court will, however, permit Mr. Gunn leave to amend this claim.

### 2. Fraudulent Concealment

Mr. Gunn next argues that the court should toll the applicable statute of limitations under Pennsylvania's "fraudulent concealment doctrine." ECF No. 34 at 9–11. The fraudulent concealment doctrine tolls the statute of limitations where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry." *Rice*, 255 A.3d at 248 (citations omitted). "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff[] justifiably relied." *Leonard*, 570 Fed. App'x at 245 (quotations omitted). "Mere mistake, misunderstanding or lack of knowledge is insufficient however; and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Rice*, 255 A.3d at 248 (cleaned up). Additionally, as with the discovery rule, to toll the statute of limitations under the doctrine of fraudulent concealment, the plaintiff must exercise reasonable diligence to discover his injury. *Riad*, 2023 WL 8676234, at *3.

Here, Mr. Gunn is not entitled to tolling based on fraudulent concealment. While Mr. Gunn alleges that the Court should toll the statute of limitations based on fraudulent concealment, ECF No. 17 ¶ 63, he fails to allege an affirmative act of concealment by the Abraxas Entities that caused him to relax his vigilance or deviate from his right of injury. Mr. Gunn asserts that Ms. Finkenbinder told him to keep the assault a secret, ECF No. 17 ¶¶ 32, 33, but such allegations are insufficient. Instead, to allege fraudulent concealment, a plaintiff must show that the defendant denied that the injury occurred or misled the plaintiff regarding the availability of a cause of action—neither of which Ms. Finkenbinder is alleged to have done. *Getchy*, 120 Fed. App'x at

899; *Fox*, 2017 WL 5007905, at *8 (refusing to apply the fraudulent concealment principle because plaintiffs had not alleged "any affirmative acts by Defendants that would have misled them into believing the sexual abuse did not occur, that the abuse had not been committed by specific corrections officers, and/or that they suffered injuries as a result."). Therefore, because Ms. Finkenbinder's comment did not deny the abuse or suggest that a cause of action was unavailable to Mr. Gunn, it is insufficient to warrant tolling based on fraudulent concealment.

Mr. Gunn's remaining argument for applying the doctrine of fraudulent concealment is a conclusory assertion that "because of Defendants' actions, including a cover-up of the abuse, [Mr. Gunn] was unable to assert his legal rights in a timely manner." ECF No. 17 ¶ 65. But such conclusory statements are insufficient to raise fraudulent concealment as they do not allege an affirmative act by the defendant. *See Kach*, 589 F.3d at 642 (refusing to apply the discovery rule where the plaintiff "merely states the name of the rule" but does not allege specific facts in support).

Finally, the Court's analysis of the discovery rule, *see* Part III.B.1, compels the same result here: the fraudulent concealment doctrine is precluded because Mr. Gunn failed to use reasonable diligence to investigate his claims against the Abraxas Entities within the applicable limitations period. *See Gunn*, 2024 WL 3013846, at *3–4 (refusing to apply the doctrine of fraudulent concealment to toll the statute of limitations for Mr. Gunn's state law claims against a different detention center because Mr. Gunn failed to investigate the detention center's culpability with reasonable diligence). Here, Mr. Gunn does not allege any investigative or other action he took in the years following the abuse. *See generally* ECF No. 17 (explaining that Mr. Gunn was not aware of the abuse or cover-up until the filing of an unrelated case against an Abraxas Entity in 2022).

Therefore, the Court declines to toll the statute of limitations based on fraudulent concealment. The Court will, however, permit Mr. Gunn leave to amend to allege facts showing due diligence following the abuse and to identify an affirmative act of fraudulent concealment by the Abraxas Entities.

### 3.    Equitable Tolling

Finally, Mr. Gunn conclusorily asserts that he is entitled to general "equitable tolling." ECF No. 17 ¶ 63 (stating that his statute of limitations "is tolled by the doctrines of fraudulent concealment, equitable tolling, and the discovery rule."). Mr. Gunn's Response in Opposition offers no separate discussion of equitable tolling; instead, he merely lumps it together as part of "the tolling and accrual doctrines of fraudulent concealment, equitable tolling, and the discovery rule." ECF No. 34 at 9–10. Further, he does not address whether he seeks such tolling apart from the Pennsylvania discovery rule and doctrine of fraudulent concealment, and if he does, whether he believes state equitable tolling principles or federal equitable tolling principles apply. *See generally* ECF Nos. 17, 34, 37. Therefore, because Mr. Gunn bears the burden of establishing these principles, *see Rice*, 255 A.3d at 248, and because he has failed to do so, *see Kach*, 589 F.3d at 642 ("[A] a passing reference to an issue will not suffice to bring that issue before this court."), the Court will not toll the statute of limitations based on general "equitable tolling."[7] The Court will, however, provide Mr. Gunn with leave to amend regarding equitable tolling.

### C.    The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims

Mr. Gunn's claims in Counts 3 through 7 arise under state law. The Court declines to exercise supplemental jurisdiction over these claims because it will dismiss all claims over which

---

[7] Because the Court has found that Mr. Gunn's claims are time-barred, and that no principle of equitable tolling is applicable, it need not reach Defendants' remaining arguments for dismissal and will deny their Motion to Strike.

15

it has original jurisdiction, *see* 28 U.S.C. § 1367(c), (c)(3).  Accordingly, the Court dismisses those claims without prejudice.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED and Mr. Gunn's First Amended Complaint will be dismissed without prejudice and with leave to amend.

DATED this 27th day of September, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record